UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VALARIE DAVIS,

        Plaintiff,

                                  Case No.  15-13773

vs.                                HON.  GEORGE CARAM STEEH

FCA US LLC a/k/a
FIAT CHRYSLER
AUTOMOBILE US LLC,

        Defendant.
_____/


ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DOC. 13)

      Plaintiff Valarie Davis alleges two hostile work environment claims against her employer, Fiat Chrysler Automobile US LLC.  Count I alleges a violation of Title VII of the Civil Rights Act of 1964.  Count II alleges a violation of Michigan's Elliott-Larsen Civil Rights Act (ELCRA).  The matter is presently before the Court on defendant's motion for summary judgment.  Oral argument was held on April 25, 2017.  For the reasons stated below, defendant's motion for summary judgment is GRANTED.

# I. Background

## A. Alleged Discrimination

Plaintiff, an African American woman, is a clay modeler (sculptor) who has worked for defendant since March 27, 2000. (Doc. 1 at PageID 2). Plaintiff alleges that she was "treated different[ly] from similarly situated white employees" and subject to "horrific discriminatory conduct" from her co-workers and managers. (*Id.*). Plaintiff states that this discrimination began around 2001 while she was working in Studio 1. (Doc. 13-3 at PageID 174).

On April 27, 2004, plaintiff submitted a letter to Ms. Gibbs, her EEOC representative, detailing various actions by co-workers and management that she considered "blatant racial discrimination" that may be "violations" of "federal law[s]" and her "civil rights". (Doc. 13-3 at PageID 178). Plaintiff's co-workers referred to her as "chicky monkey" and their "little brown friend." (Doc. 1 at PageID 3; Doc. 13-3 at PageID 175). They commented that plaintiff, a Detroit resident, "live[d] in the ghetto." (Doc. 13-3 at PageID 176). While plaintiff was pregnant, they asked her if she "had chocolate milk in her breast." (Doc. 1 at PageID 3; Doc. 13-3 at PageID 175). Another co-worker used a "monkey calling device" that produced a "whistle sound. . . designed to attract monkeys" whenever she walked by.

(Doc. 1 at PageID 2; Doc. 13-3 at PageID 175).  Plaintiff's supervisor ridiculed her for wearing a Roots sweatshirt in an apparent reference to the television miniseries, *Roots*, which recounts the history of an African man sold into slavery in America, and his descendants.  (Doc. 13-3 at PageID 175).  They referred to other African American employees as "Colored" and "made remarks about their kinky hair."  (Doc. 13-3 at PageID 175).  Plaintiff states that she apprised management and human resources of many of these acts.  (Doc. 1 at PageID 3).  Plaintiff also contacted her union steward on several occasions, submitting complaints and paperwork to aid an investigation.  (Doc. 13-3 at PageID 176).  Dissatisfied with their response, plaintiff met with another union representative in April 2004, "who strongly recommended that [she] take [her] issues to" defendant's "EEOC representative."  (Doc. 13-3 at PageID 176).

Following her April 27, 2004 complaint, plaintiff asserts that she did not experience any further discrimination while working in Studio 1.  (Doc. 13-2 at PageID 60; Doc. 14 at PageID 381).

Plaintiff moved from Studio 1 to Studio 7/8 in 2012.  (Doc. 13-2 at PageID 130).  Discrimination allegedly resumed at an unspecified point following this move.  Plaintiff filed a complaint with defendant's Diversity Office on March 25, 2013, stating that throughout the past two years, she

had experienced several actions that she found "unprofessional, ignorant. . . and even racist." (Doc. 13-5 at PageID 219-21). These acts included unspecified comments from co-workers and "a monkey hanging from a cubical with Christmas lights wrapped around its neck." (Doc. 13-5 at PageID 220). Defendant responded by conducting a walk-through of Studio 7/8. (Doc. 13-6 at PageID 222). Kymberly Kinchen, Keith Worthy, and Lisa Hornung observed a monkey hanging from a cubicle by its arms with Christmas lights wrapped around its waist. (*Id.*). They noted a second monkey sitting on top of an overhead cabinet at the opposite end of the studio and concluded that "neither monkey[ ] appeared to be racially offensive in any way." (*Id.*). Following this inspection, on April 8, 2013, Kinchen and Worthy met with plaintiff to discuss her concerns. (*Id.*). Plaintiff emailed Kinchen that evening to report that both monkeys were still displayed in Studio 7/8 and that she took this "very seriously" given that "monkeys have" historically "been used to depict" African Americans "in derogatory terms." (Doc. 14-27 at PageID 952).

Plaintiff asserts that her co-workers displayed eight to ten monkeys in Studio 7/8 between 2013 and January 2015. (Doc. 1 at PageID 3). The monkeys appeared in various forms including photographs within a calendar, stuffed and inflatable animals, a ceramic mold, and a Valentine's

Day card given to plaintiff that depicted a monkey. (Doc. 1 at PageID 4).

Plaintiff also alleges that her co-workers taunted her by repeating Johnny

Cochran's statement; "if it does not fit, you must acquit." (*Id.*). Plaintiff

complained to management and/or human resources about the monkeys

on or about March 25, 2013, February 10, 2014, and February 13, 2015.

(*Id.*). She also "repeatedly" informed her co-workers that the monkeys

offended her and were "racially insensitive." (*Id.*). Plaintiff filed a charge of

discrimination with the EEOC on March 10, 2015. (Doc. 13-10 at PageID

276). She received notice of the EECO's decision to close its file on her

charge as well as her suit rights on August 20, 2015. (Doc. 13-11 at

PageID 277). Plaintiff filed this lawsuit on October 26, 2015. (Doc. 1 at

PageID 7).

## B. Plaintiff's Bankruptcy

Plaintiff filed a Chapter 13 bankruptcy petition on April 30, 2008.

(Doc. 13-12 at PageID 281-93). Her Chapter 13 bankruptcy plan was

confirmed on October 3, 2008. (Doc. 13-14 at PageID 308-09). The plan

was modified for the last time on July 25, 2013. (Doc. 13-15 at PageID

310-11). The Bankruptcy Court for the Eastern District of Michigan issued

an order discharging plaintiff after the completion of her Chapter 13 plan on

December 10, 2013. (Doc. 13-16 at PageID 312-13).

## II. Legal Standard

Rule 56(c) empowers a court to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc) (citing Fed. R. Civ. P. 56(c)).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original); *see*

*also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. There must instead be evidence from which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### III. Analysis

**A. Estoppel**

Defendant argues that judicial estoppel precludes plaintiff from bringing her hostile work environment claims. Plaintiff responds that judicial estoppel does not apply because she obtained this cause of action more than seven years after she filed for bankruptcy.

"Th[e] doctrine [of judicial estoppel] is utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *White v. Wyndham Vacation Ownership, Inc.,* 617 F.3d 472, 476 (6th Cir.2010) (internal citations omitted). "Judicial estoppel, however, should be applied with caution to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement." *Eubanks v. CBSK Fin. Grp., Inc.,* 385 F.3d 894, 897 (6th Cir.2004) (internal citations omitted).

> [T]o support a finding of judicial estoppel, [the Court] must find that: (1) [plaintiff] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [plaintiff's] omission did not result from mistake or inadvertence. In determining whether [plaintiff's] conduct resulted from mistake or inadvertence, this court considers whether: (1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, we will look, in particular, at [plaintiff's] "attempts" to advise the bankruptcy court of her omitted claim.

*White*, 617 F.3d at 478.

**1. Plaintiff Assumed a Position that Was Contrary to the One She Asserted Under Oath in the Bankruptcy Proceedings.**

"[T]o support a finding of judicial estoppel, [the Court] must find that: (1) [plaintiff] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings." *White*, 617 F.3d at 478. "[I]t is well-established that at a minimum, 'a party's later position must be "clearly inconsistent" with its earlier position[ ]' for judicial estoppel to apply." *Lorillard Tobacco Co v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).

Plaintiff's position in this case is clearly inconsistent with the position that she asserted under oath in the bankruptcy proceedings. In her complaint, plaintiff asserts claims under Title VII and the ELCRA, and asks the Court to "award judgment against defendant" for the "economic and non-economic damages" she sustained. (Doc. 1 at PageID 7). It is undisputed that plaintiff did not list this cause of action when she filed for bankruptcy on April 30, 2008, and did not amend this position while the bankruptcy was pending. (Doc. 13-12 at PageID 292).

Plaintiff's failure to disclose her claims was contrary to the bankruptcy code. A debtor filing under Chapter 13 must file "a schedule of assets and liabilities." 11 U.S.C. § 521(1). A cause of action is an asset that must be

scheduled under § 521(1).  *Eubanks*, 385 F.3d at 897.  Debtors are also

"required to disclose all potential causes of action."  *Lewis v.*

*Weyerhaeuser*, 141 F. App'x 420, 424 (6th Cir. 2005) (quoting *In re Coastal*

*Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)).  "The debtor need not know

all the facts or even the legal basis for the cause of action; rather, if the

debtor has enough information. . . prior to confirmation to suggest that it

may have a possible cause of action, then that it is a 'known' cause of

action such that it must be disclosed."  *In re Coastal Plains, Inc.*, 179 F.3d

at 208 (quoting *Youngblood Grp. v. Lufkin Federal Savings and Loan*

*Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996)).  "Any claim with potential

must be disclosed, even if it is 'contingent, dependent, or conditional.'"  *Id.*

This "duty of disclosure is a continuing one."  *Lewis*, 141 F. App'x at 424

(internal quotations and citations omitted).

Despite her duty to disclose, plaintiff never listed this cause of action.

As such, plaintiff now assumes a position contrary to the one she asserted

under oath in her bankruptcy proceeding.

### 2. The Bankruptcy Court Adopted the Contrary Position.

"[T]o support a finding of judicial estoppel, [the Court] must find that: .

. . (2) the bankruptcy court adopted the contrary position either as a

preliminary matter or as part of a final disposition."  *White*, 617 F.3d at 478.

It is undisputed that plaintiff did not list these claims in her schedule of assets and liabilities, and that plaintiff never amended this position while her bankruptcy was pending. It is also undisputed that the bankruptcy court issued plaintiff's discharge order on December 10, 2013. (Doc. 13-16 at PageID 312-13). The undisputed facts, therefore, indicate that the bankruptcy court adopted plaintiff's contrary position.

### 3. Plaintiff's Omission Did Not Result from Mistake or Inadvertence.

"[T]o support a finding of judicial estoppel, [the Court] must find that: . . . (3) [plaintiff's] omission did not result from mistake or inadvertence." *White*, 617 F.3d at 478. "In determining whether [plaintiff's] conduct resulted from mistake or inadvertence, this court considers whether: (1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith." *Id.*

#### a. Plaintiff Did Not Lack Knowledge of the Factual Basis of the Undisclosed Claims.

Plaintiff alleges a hostile work environment based on discrimination that allegedly occurred between 2001 and 2015. Most of the allegations in her complaint, (Doc. 1 at PageID 2-4), are reflected in two pieces of evidence; plaintiff's April 27, 2004 letter to her EEOC representative, (Doc.

13-3 at PageID 174-78), and her March 25, 2013 letter to defendant's diversity office, (Doc. 13-5 at 219-21). If a single act contributing to a Title VII hostile environment claim occurs within the filing period outlined by 42 U.S.C. § 2000e-5, then "the entire time period of the hostile environment claim may be considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). "It does not matter that some of the component acts fall outside the statutory time period." *Id.* Count I, therefore, encompasses all of these allegations. But, due to the ELCRA's three year period of limitations, Count II is based solely on acts occurring between 2012 and 2015. Acts committed prior to 2012, including all of the allegations included in plaintiff's April 27, 2004 complaint, may serve as background evidence to contextualize the ELCRA claim.

When plaintiff filed for bankruptcy on April 30, 2008, she had knowledge of all of the discrimination that she experienced and directly observed between 2001 and 2004. These acts include various comments from co-workers and managers regarding a monkey, brown skin, kinky hair, and ghettos, as well as the use of a "monkey calling device." (Doc. 13-3 at PageID 174-78). In addition to her knowledge of these facts, plaintiff knew that the acts offended her. She described them as "blatant racial

discrimination" that may be "violations" of "federal law[s]" and her "civil rights." (Doc. 13-3 at PageID 175). Plaintiff also knew that she had complained about these acts. She reported them to management and human resources. (Doc. 1 at PageID 3). She contacted her union steward to submit multiple complaints and paperwork to aid their investigation. (Doc. 13-3 at PageID 176). She also met with an additional union representative "who strongly recommended that [she] take [her] issues to" defendant's "EEOC representative." (Doc. 13-3 at PageID 176).

Plaintiff asserts that she did not have a potential Title VII or ELCRA claim against defendant on April 30, 2008 because she had never filed an EEOC charge regarding the discrimination alleged in her April 27, 2004 complaint and, in 2008, was time barred from doing so. (Doc. 13-3 at PageID 174-78). But plaintiff's circumstances changed. She asserts that racial discrimination resumed around 2012. (Doc. 13-5 at PageID 220) (alleging discrimination "during the last 2 years and even now [March 25, 2013].") During this time, while her bankruptcy was still pending, plaintiff gained more knowledge of the factual basis of Counts I and II. On March 25, 2013, plaintiff complained about a monkey wrapped in Christmas lights in Studio 7/8. (Doc. 13-5 at PageID 220). She complained about this and a second monkey on April 8, 2013. (Doc. 14-26 at PageID 950). Plaintiff

also knew that these acts offended her and that she had complained about them. In April 2013, she met with defendant's diversity representatives and stated that she took these acts "very seriously" given that "monkeys have" historically "been used to depict" African Americans "in derogatory terms." (Doc. 14-27 at PageID 952). The Court, therefore, finds that plaintiff had knowledge of the factual basis of the undisclosed claims by April 2013 such that the omission of these claims did not result from mistake or inadvertence.

### b. Plaintiff Had a Motive to Conceal her Claims.

Debtors petitioning for bankruptcy protection always have a motive to conceal undisclosed claims; "wanting to keep any settlement or judgment to himself." *Stephenson v. Malloy*, 700 F.3d 265, 274 (6th Cir. 2012). *See also Lewis*, 141 F. App'x at 426 ("It is always in a Chapter 13 petitioner's interest to minimize income and assets."). If a claim is disclosed, it will "[become] a part of the bankruptcy estate, then the proceeds from it could go towards paying [the debtor's] creditors, rather than simply to paying [the debtor]." *White*, at 479.

Plaintiff concealed the existence of her claims. It is undisputed that she did not list this cause of action when filing for bankruptcy on April 30, 2008, and did not amend this position while the bankruptcy was pending.

(Doc. 13-12 at PageID 292). Concealing the claims allowed them to be exempted from plaintiff's bankruptcy estate. If exempted, plaintiff would be likely to "keep any settlement or judgment to [herself]." *Stephenson*, 700 F.3d at 274. The Court, therefore, finds that plaintiff had a motive to conceal her claims.

### c. The Evidence Does Not Indicate an Absence of Bad Faith.

The "absence of bad faith inquiry focuses on affirmative actions taken by the debtor to notify the trustee or bankruptcy court of an omitted claim." *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 315 (6th Cir. 2013). It is undisputed that plaintiff did not list these claims in her original schedule of assets. (Doc. 13-12 at PageID 292). Further, despite her continuing duty to disclose assets including a potential cause of action, plaintiff never amended the schedule to list the claims while her bankruptcy was pending. The evidence before the Court, therefore, does not indicate an absence of bad faith.

### 4. Plaintiff's Arguments Are Not Dispositive.

Plaintiff argues that she did not fail to disclose a pre-petition claim because, due to her failure to file an EEOC charge around 2004 and the ELCRA's limitation period, she did not have a cause of action on April 20, 2008. Plaintiff instead asserts that her claims arose post-petition. But

Chapter 13 debtors have a continuing obligation to disclose all potential claims, *Lewis*, 141 F. App'x at 424, including potential claims that arise post-petition while the bankruptcy is pending. *See Kimberlin*, 520 F. App'x at 315 (finding that plaintiff should have notified the court of her potential post-petition claim that arose only 41 days before her final bankruptcy payment was scheduled so that the Court could have "modified her Chapter 13 plan to grant creditors some percentage of any future recovery."); *Scisney v. Gen. Elec. Co.*, No. 4:14-cv-00008, 2015 WL 7758542, at *5 (W.D. Ky. Dec. 1, 2015) (applying judicial estoppel where the plaintiff, a Chapter 13 debtor, experienced discrimination both pre-petition and post-petition, "knew of the factual basis for potential claims post-petition but pre-discharge," and "failed to disclose any of them at any time." *See also In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013) ("Chapter 13 debtors have a continuing obligation to disclose post-petition causes of action."). Thus, even if plaintiff's claims are viewed as post-petition, the allegations occurring between 2012 and April 2013 triggered her duty to disclose. These allegations constitute a potential claim because, even if plaintiff did "not know all the facts or even the legal basis for the cause of action" by April 2013, these acts provided "enough information. . . prior to confirmation to suggest that [plaintiff] may have a

possible cause of action" which is considered "a 'known' cause of action

such that is must be disclosed." *In re Coastal Plains, Inc.*, 179 F.3d at 208

(quoting *Youngblood Grp.* 932 F. Supp. at 867). Further, plaintiff's

bankruptcy was still pending in April 2013 when this potential claim arose.

*See* (Doc. 13-16 at PageID 312-13). Therefore, even if this cause of action

arose post-petition, plaintiff was required to disclose these claims.

## B. Hostile Work Environment

Hostile work environment claims involve repeated conduct. *Morgan*,

536 U.S. at 115. These claims "offer[ ] employees protection from a

'workplace[ ] permeated with discriminatory intimidation, ridicule, and insult

that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment. . . .'" *Barrett v.*

*Whirlpool Corp.,* 556 F.3d 502, 514 (6th Cir.2009) (quoting *Harris v. Forklift*

*Sys., Inc.,* 510 U.S. 17, 21 (1993)) (alteration in original). "To prove that

[s]he was subject to a hostile work environment in violation of Title VII,

plaintiff must prove: (1) [s]he belongs to a protected group; (2) [s]he was

subject to unwelcome harassment; (3) the harassment was based on race;

(4) the harassment affected a term, condition, or privilege of employment

and (5) defendant knew or should have known about the harassment and

failed to take action." *Moore v. KUKA Welding Sys. & Robot Corp.,* 171

F.3d 1073, 1078–79 (6th Cir.1999).  The elements of a hostile work environment under the ELCRA "are substantially the same."  *Curry v. SBC Commc'ns, Inc.*, 669 F. Supp. 2d 805, 833 (E.D. Mich. 2009) (citing *Quinto v. Cross & Peters Co.,* 451 Mich. 358, 368-69 (1996)).

The Court finds that the first two elements are satisfied here, as plaintiff, an African American, repeatedly complained of the alleged discrimination.  The comments allegedly made to plaintiff between 2001 and 2004 constitute harassment based on race.  It is less clear whether the presence of numerous monkeys in Studio 7/8 also constitute harassment based on race.  Defendant argues that a few monkeys were placed in Studio 7/8 prior to plaintiff joining that office.  Moreover, they argue that all of the monkeys were "sentimental mementos," (Doc. 13 at PageID 105), as opposed to racial harassment.  Plaintiff disagrees, asserting that monkeys have historically been used to depict African Americans in derogatory terms.  The Court, however, finds that even if the monkeys constitute racial harassment, plaintiff's claim fails because the race-based harassment was not sufficiently severe or pervasive.

The Court must "consider whether the totality of [the] race-based harassment was 'sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment.'"

*Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011) (quoting Harris, 510 U.S. at 21).  The harassment must be severe or pervasive in two aspects.  *Curry*, 669 F. Supp. 2d at 833.  "Both an objective and subjective test must be met; in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim." *Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 733 (6th Cir.2006).  "Factors to consider include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Williams*, 643 F.3d at 512 (citing *Harris*, 510 U.S. at 23).

The alleged racist statements made between 2001 and 2004 "are certainly insensitive, ignorant, and bigoted."  *Id.* at 513.  The display of numerous stuffed monkeys is also insensitive.  But, even when considered in their totality, this harassment is not sufficiently severe or pervasive.  The Sixth Circuit "has established a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory."  *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017) (citing *Williams*, 643 F.3d at 506, 513 (finding no hostile work environment where defendant "call[ed] Jesse Jackson and Al Sharpton 'monkeys' and [said]

that black people should 'go back to where [they] came from'" among other

racist comments); *Reed v. Procter & Gamble Mfg. Co.*, 556 Fed.Appx. 421,

432 (6th Cir. 2014) (no hostile work environment where plaintiff was

subjected to race-based comments and his supervisor stood behind him

and made a noose out of a telephone cord); *Clay v. United Parcel Service,*

*Inc.*, 501 F.3d 695, 707–08 (fifteen racially-motivated comments and

instances of disparate treatment over a two-year period were isolated, not

pervasive, and therefore not actionable under Title VII).  "The misconduct

alleged here . . . does not clear that bar."  *Phillips*, 854 F.3d at 328.  As in

*Williams*, the alleged statements "more closely resemble 'a mere offensive

utterance' than conduct that is 'physically threatening or humiliating.'"

*Williams*, 643 F.3d at 513.  Further, the statements are isolated from the

monkey displays by both time and space.  The former occurred in Studio 1

between 2001 and 2004.  The latter occurred in Studio 7/8, a different

office, between 2013 and 2015.  Finally, there is no evidence that the

harassment unreasonably interfered with plaintiff's work performance.  She

has worked for defendant since 2000 without any leaves, absences, or

unsuccessful performance that she attributes to the alleged harassment.

As such, defendant is entitled to judgment as a matter of law.

## IV. Conclusion

Plaintiff does not cite to evidence that creates a genuine issue of material fact as to whether she assumed a position contrary to the one she asserted in her bankruptcy proceeding, whether the bankruptcy court adopted the contrary position as part of a final deposition, or whether her omission resulted from mistake or inadvertence. Moreover, plaintiff has not provided a genuine issue of material fact regarding the severity and pervasiveness of her hostile work environment claims. Therefore, for the reasons stated above, the Court finds that defendant is entitled to summary judgement on the basis of judicial estoppel.

IT IS SO ORDERED.

Dated: August 22, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 22, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---